## UNITED STATES v. ORNER.

United States District Court
S. D. New York.

Sept. 25, 1950.

George G. Allen, Chief, Litigation Section, Office of The Housing Expediter, New York City, Samuel Hodes, New York City, for plaintiff.

Faustina Orner, New York City, pro se.

McGOHEY, District Judge.

This is an action under the Housing and Rent Act of 1947, as amended.[1] The Government seeks treble damages; injunction against future violations of the Act; and restitution of alleged overcharges for furniture, the sale of which was "tied in" with a sublease made by the defendant.

The defendant appeared through an attorney who filed an answer. It admitted that the apartment in question was subject to the Act and that the maximum legal rent was $138 per month, but denied that the sale of the furniture was "tied in" with the lease. It alleged the sale to be a wholly independent transaction made in good faith and without intent to violate the law. Thus the only issues tried were (a) was the sale of furniture "tied in" with the lease; (b) if so, did it constitute an exaction of rent in excess of the maximum legal rent, and (c) was the violation wilful.

The defendant represented herself at the trial. She cross-examined witnesses, testified and presented arguments to the Court. She is quite intelligent and conducted her defense competently. Most of the evidence bore on the issue of the fair value of the furniture at the time of sale.

The following facts were not disputed. In February, 1948, the defendant was the lessee of the premises, Apartment 11 A at 310 East 55 Street in the Borough of Manhattan, New York City, pursuant to a written lease dated and executed on November 25, 1947. The term of the lease was to commence on January 1, 1948, and terminate on September 30, 1950. The rent was $1,656 per year or $138 per month. The defendant was in occupancy of the apartment on November 25, 1947 and had been continuously from some time in 1945 when she had subleased it from a prior tenant.

In the latter part of February, 1949, with the consent of her landlord, the defendant assigned her lease to Ellsworth E. Rose and, by Bill of Sale executed Febru-

1. Title 50 U.S.C.A.Appendix, § 1881 ff.

ary 25, 1949, sold to him the furnishings of her apartment for $5,000. Rose thereupon took possession of the furnished apartment.

Some time in October, 1948 the defendant, contemplating a journey to Japan, engaged a real estate broker to find some one willing to take over her apartment and purchase its furnishings for the sum of $7,500. Rose had previously engaged the same broker to find an apartment for him. The broker's saleslady brought Rose to the apartment but he was unwilling to pay $7,500 for the furniture and no agreement was reached. The following February the defendant informed the broker that she would take $5,000 for the furniture. This information was communicated by the broker to Rose, who accepted the offer. Rose, whose testimony I believe completely, said he was about to be married and preferred to get the apartment unfurnished so that he and his wife could furnish it to their own taste. The defendant, however, refused to sub-lease to any one who would not buy the furniture. She admitted this. She admitted, moreover, that she had never applied to the Housing Expediter for approval of her proposed sub-lease and sale. They were never approved.

The transaction, therefore, was in violation of the Housing and Rent Act as amended and the regulations made pursuant thereto.[2] This finding alone, however, will not support an award of treble damages as demanded by the Government. These are proper only when the violation is wilful. I think it was not wilful here. The defendant is not a landlord in the ordinary sense; she is not in the real estate business, and from what appears she had never done this before. It was entirely reasonable for her to assume that, since she was not asking for a rental higher than that specified in her lease, she was free to sell her furniture to her sub-tenant without Government approval. In this, to be sure, she was wrong, but I find she was not wilfully violating the law. Damages and counsel fees therefore are not awarded. This I

think is equitable and conforms to the "necessity of the particular case."[3]

The issue most strongly contested at the trial was the value of the furniture. Rose testified that as soon as he and his wife moved into the apartment they found the furnishings to be worn, shabby and in general bad condition. He said that on the two prior occasions when he was in the apartment to discuss the rental and sale with the defendant he had merely looked at the furniture. Careful examination discovered the bad condition. He communicated with the broker's saleslady who testified she relayed the complaint to the defendant with a suggestion about adjustment. None was made. On March 15, 1949, within two weeks after moving in, Rose had the furnishings examined by Joseph J. Nuny, President of Commonwealth Appraisal Corporation. He testified, and his written report was put in evidence. He valued the furnishings at $2,078.

The defendant testified that she had purchased part of the furnishings from her predecessor in the apartment for $3,477, in May, 1945, and had added additional pieces which she valued at not less than $2,500, making the total value $5,977. An appraiser whom she called testified that his appraisal made on April 19, 1950, during the trial, showed the furnishings to be then worth a total of $4,350.25. His detailed report was received in evidence.

On the issue of value, I am compelled to accept the appraisal of the plaintiff's expert, Mr. Nuny. He is in the business of making appraisals and has been for many years. He has been retained as such in the administration of large estates and otherwise. He impressed me as wholly objective in his testimony and he appeared to me to be competent and experienced. The defendant's appraiser, on the other hand, is essentially an insurance agent. His infrequent appraisal activities are incidental to that. His examination of the furniture was, by his own admission, not thorough. The defendant's testimony on this point is

2. United States v. De Porceri, 2 Cir., 161 F.2d 526.

3. Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754; Porter v. Warner Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332.

not convincing. I accept the testimony of the plaintiff's expert on the question of value, and find that at the time of sale the defendant overcharged the tenant Rose by the amount of $2,922. She will be required to make restitution in that amount. She will also be enjoined from future violation of the Housing and Rent Act, as amended.

My findings of fact and conclusions of law are sufficiently set forth above.

Submit decree.